UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. PRABHJOT UPPAL, an individual | ) ) ) | |
| Plaintiff, | ) ) | 15-CV-3806 |
| v. | ) ) | |
| ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE, an Illinois non-for-profit | ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Dr. Prabhjot Uppal ("Dr. Uppal"), by and through her attorneys, Parikh Law Group, LLC, and for her Verified Complaint against Rosalind Franklin University of Medicine and Science ("RFUMS") states as follows:

## PARTIES

1. Dr. Uppal is an individual who resides in Merced, California.

2. RFUMS is an Illinois non-for-profit corporation organized and existing under the laws of the State of Illinois and operating a university offering medical and healthcare education with its principal place of business located at 3333 Green Bay Road, North Chicago, Illinois 60064.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1332(a) because Dr. Uppal is a citizen of California while RFUMS is a citizen in Illinois and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1)

because RFUMS is a citizen in the Northern District of Illinois and moreover, a substantial part of the events or omissions giving rise to Dr. Uppal's claims occurred in the Northern District of Illinois.

## FACTS

5. The crux of Dr. Uppal's complaint is RFUMS' systematic and continued discrimination against Dr. Uppal and her desire to continue her medical career. Essentially, after taking over $250,000.00 in tuition from Dr. Uppal, RFUMS has wrongly refused to grant Dr. Uppal access to the American Medical Association's Electronic Residency Application Service and Application Data Tracking System (ERAS/ADTS) necessary to apply for post-graduate programs; the system that all medical students and physicians across the country use to apply for residency and fellowship post-graduate programs. The refusal to grant Dr. Uppal access to the system necessary to apply for residency programs is tantamount to refusing to provide Dr. Uppal her medical degree despite completing all requirements necessary to earn her medical degree. Instead of being a practicing physician, Dr. Uppal has her medical degree but is unable to continue her career, instead being forced to find a way pay for substantial medical school loans, which she is unable to do.

6. Prior to 2004, RFUMS was known as Finch University of Health Sciences (FUHS). In 2000, Dr. Uppal was accepted to the One-Year Masters in Applied Physiology program at FUHS, received her M.S. in Applied Physiology in 2001 and matriculated into the Four-Year Doctorate of Medicine program, where she was pursuing her medical degree. To that end, Dr. Uppal enrolled at RFUMS and took all classes necessary to graduate and earn her medical degree.

7. In 2006, Dr. Uppal completed all courses and requirements necessary to graduate

from RFUMS and earn her medical degree and the opportunity to apply for residency programs.

8.    In order to apply for residency at medical programs across the country, the doctor applicant must request, and receive, a token, which enables the doctor applicant to apply for residency programs through the Electronic Residency Application Service ("ERAS").  To receive a token, the doctor applicant must make a request through the On-line Applicant Status and Information System ("OASIS").  Ultimately, the medical school that the doctor applicant earned her medical degree from must issue a token to the doctor applicant.  A token is valid for only one year.  Thus, every year the doctor applicant needs to apply for a residency program, the doctor applicant must receive a new token.  A token is essentially the key which allows the doctor applicant to access the ERAS and apply for residency programs.  Without a token, the doctor applicant is unable to apply for residency programs, practice medicine and utilize her medical degree.  Simply put, without a token, the medical degree earned is worthless.

9.    In addition to providing a token, the medical school also uploads the doctor applicant's documents into ERAS, including the letters of recommendation for the doctor applicant.

10.    RFUMS provided a token to Dr. Uppal for the years of 2006 and 2007, allowing her to apply for residency programs through ERAS.  However, beginning in 2008, RFUMS wrongly refused to provide Dr. Uppal a token despite her many requests. RFUMS took the ultimate action by unilaterally refusing to issue a token since 2008 without any hearing, locking Dr. Uppal out from continuing her profession.  In fact, Dr. Uppal has been told by RFUMS that RFUMS has made its decision and it will not be revisited.  See Letter dated August 25, 2008, and attached hereto as Exhibit 1.  RFUMS' wrongful refusal to provide a token has continued despite Dr. Uppal's continued requests for a token. Moreover, even when RFUMS was providing Dr.

Uppal with a token, RFUMS was failing to upload all of Dr. Uppal's documents by failing to upload all her letters of recommendation.

11. RFUMS provided no disciplinary hearing when refusing to provide Dr. Uppal the Token. Instead, RFUMS unilaterally refused to provide the Token, effectively putting to a halt Dr. Uppal's career.

12. Failing to provide Dr. Uppal the token necessary to apply for residency programs through ERAS has made her medical degree worthless. RFUMS' action is the same as refusing to provide her with her medical degree despite the fact that she has completed all courses and requirements necessary to earn her medical degree.

13. Since RFUMS now refuses to grant Dr. Uppal the Token, Dr. Uppal is unable to apply for, and be accepted into a residency program and continue her medical career.

14. In all, during Dr. Uppal's time at RFUMS, she paid approximately $250,000.00 to RFUMS for tuition, room and board, books and other costs.

15. Dr. Uppal demands a jury trial.

## COUNT I
## BREACH OF CONTRACT FAILURE TO PROVIDE A TOKEN

16. Dr. Uppal realleges paragraphs 1-15 as if fully set forth herein.

17. By attending RFUMS, Dr. Uppal agreed to make all necessary tuition payments and accompanied costs to RFUMS and Dr. Uppal further agreed to complete the program curriculum necessary for a Doctorate in Medicine that RFUMS offers to earn her medical degree and, in turn, a token. In return for Dr. Uppal's payment of her tuition and all other necessary costs to RFUMS, RFUMS agreed to provide Dr. Uppal with her medical degree and a token upon completion of the program curriculum.

18. By completing the program curriculum and making all necessary payments to

RFUMS, Dr. Uppal has done all that is required by RFUMS to earn her medical degree and a token to enable her to apply to residency programs.

19. However, in violation of its contractual obligations, after taking over $250,000.00 in tuition and related payments from Dr. Uppal and after Dr. Uppal completed all the program requirements, RFUMS, since 2008, has refused to provide a token, instead holding Dr. Uppal captive in a state of limbo where she cannot continue her career but cannot get away from RFUMS.

20. By failing to provide a token to Dr. Uppal since 2008, RFUMS has breached its contract with Dr. Uppal.

21. Additionally, each year that has passed in which RFUMS refuses to provide Dr. Uppal a token, Dr. Uppal is unable to work in her chosen profession and suffers money damages which cannot be quantified. Further, the majority of residency programs only accept residency applicants who have graduated from medical school within 3 to 5 years at the time of application. By denying year after year Dr. Uppal's ability to apply for residency programs, RFUMS has permanently damaged Dr. Uppal's career and its potential. Dr. Uppal is no longer qualified to apply for residency programs she once was solely due to the actions of RFUMS.

22. RFUMS' wrongful acts are precluding Dr. Uppal from utilizing her education and working in her chosen career field. The right of Dr. Uppal to utilize her education and work in the field of her choice is a clear and ascertainable right in need of protecting.

**WHEREFORE**, for the reasons set forth above, Dr. Uppal respectfully requests that his Court find in her favor and against RFUMS, order RFUMS to provide Dr. Uppal a token and compensate Dr. Uppal for all damages to be proven at trial, including lost profits, and any other relief the Court deems equitable and just.

## COUNT II
## UNJUST ENRICHMENT

23. Dr. Uppal realleges paragraphs 1-15 as if fully set forth herein.

24. Count II is pleaded in the alternative to Count I.

25. Dr. Uppal provided a benefit to RFUMS by making tuition payments totaling $250,000.

26. In return, upon graduating from RFUMS, Dr. Uppal expected to earn her medical agree and be able to apply for residency programs through the ERAS.

27. By accepting Dr. Uppal's tuition payments, RFUMS accepted the benefit from Dr. Uppal.

28. RFUMS has wrongly refused since 2008 to provide Dr. Uppal a token. This refusal is tantamount to refusing to provide Dr. Uppal her medical degree despite Dr. Uppal paying RFUMS the necessary tuition fees and completing the program curriculum..

29. It would be inequitable and unconscionable for RFUMS to be permitted to retain Dr. Uppal's tuition payments without providing her with a token.

**WHEREFORE**, for the reasons set forth above, Dr. Uppal respectfully requests that his Court find in her favor and against RFUMS, order RFUMS to provide Dr. Uppal a token and compensate Dr. Uppal for all damages to be proven at trial, including lost profits,250 and any other relief the Court deems equitable and just.

## COUNT III
## INJUNCTIVE RELIEF

30. Dr. Uppal realleges paragraphs 1-15 as if fully set forth herein.

31. RFUMS' wrongful acts are precluding Dr. Uppal from utilizing her education and working in her chosen career field. The right of Dr. Uppal to utilize her education and work in

the field of her choice is a clear and ascertainable right in need of protecting.

32. RFUMS' refusal to provide a token is precluding Dr. Uppal from utilizing her education and working in her chosen career field is causing irreparable harm to Dr. Uppal. Every day that passes and Dr. Uppal does not receive a token is one additional day that Dr. Uppal cannot become a practicing physician, which is causing irreparable harm as Dr. Uppal cannot get that time back.

33. Additionally, the wrong Dr. Uppal is suffering is a wrong to which there is no adequate remedy at law. No amount of money damages can give Dr. Uppal back the time she is losing from her career as a physician. No amount of money can quantify the enjoyment Dr. Uppal is losing by being unable to help others.

34. Finally, given RFUMS' actions, Dr. Uppal is likely to prevail on the merits of hier claim.

**WHEREFORE**, for the reasons set forth above, Dr. Uppal respectfully requests that this Court find in her favor and against RFUMS, order RFUMS to provide Dr. Uppal a token and compensate Dr. Uppal for all damages to be proven at trial and any other relief the Court deems equitable and just.

Date: April 30, 2015

        Respectfully submitted,
       **Parikh Law Group, LLC**

          s/ Justin Kaplan

       Justin Kaplan (6298464)
       Attorney for Plaintiff
       Dr. Prabhjot Uppal
       150 S. Wacker Drive, Suite 2600
       Chicago, IL 60606
       (312) 725-3476 (tel.)