IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. PRABHJOT UPPAL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 15-cv-3806 ) |
| ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE | ) Magistrate Judge Jeffrey Cole ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE AND NON-PARTY NATALIE CORREIA, DO'S MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**

Defendant, Rosalind Franklin University of Medicine and Science (the "University") and Non-Party Dr. Natalie Correia, DO ("Dr. Correia"), by their undersigned attorneys, move this Court to quash the non-party subpoena served on Dr. Correia by Plaintiff, pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iv), and for a protective order, pursuant to Fed. R. Civ. P. 26(c)(1), and in support of their motion states as follows:

**INTRODUCTION**

Despite Plaintiff's attempts to relitigate the distant past and her career mishaps a decade ago caused by her own long history of professional misconduct, this case is simple: whether the University breached any fiduciary duty[1] owed to Plaintiff when it made its "ultimate" decision not to further sponsor Plaintiff's residency application by issuing her a token to access the online residency program system in August 2008. As outlined in the University's fully briefed motion to dismiss, Plaintiff's claims fail as the University owes no fiduciary duty to its former student as

---

[1] In its Response to the University's first Motion to Dismiss, Plaintiff withdrew her claims and alleged new claims, one of which, in response to the University's second motion to dismiss, has been withdrawn.

a matter of law, and even if the University had such a fiduciary duty, Plaintiff's claim is time-barred by Illinois' five-year statute of limitations for breach of fiduciary duty claims.

Now, Plaintiff has issued a non-party subpoena seeking the deposition testimony of Dr. Correia who in 2005 participated on behalf of Advocate Lutheran General Hospital ("Lutheran General") in an investigation of Plaintiff's claim of harassment which led to Plaintiff's termination from the residency program at Lutheran General in 2005. Plaintiff then pursued an Equal Employment Opportunity Commission ("EEOC") claim against Lutheran General that the EEOC determined it would not pursue. Rather than sue, Plaintiff then pursued telephonic and email harassment of her former colleagues at Lutheran General which led to her guilty plea to a felony harassment charge in 2010 and again to a misdemeanor guilty plea to harassment in June 2015.

Requiring Dr. Correia to sit for a deposition regarding events that took place ten years ago and which have no connection to any of the underlying issues in this case would be harassing, unduly burdensome and oppressive on Dr. Correia and a complete waste of time and resources for the University. Accordingly, the University and Dr. Correia request that the Court quash Plaintiff's subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iv) and issue a protective order under Fed. R. Civ. P. 26(c)(1).

## FACTUAL BACKGROUND

From 2001 to 2005, Plaintiff was enrolled in the University's Four-Year Doctorate of Medicine program. (Am. Compl. ¶¶ 6-7). In 2005, Plaintiff completed the necessary courses and requirements to graduate from the University, earn her medical degree and apply for residency programs. (*Id.*).

2

Upon completion of her degree, Plaintiff sought a token which enables residency applicants to apply for residency programs through the Association of American Medical Colleges' ("AAMC") Electronic Residency Application Service ("ERAS"). (*Id*. at ¶¶ 8 and 10). From 2005 to 2007, the University granted Plaintiff's requests and issued her a token. (*Id*.).

In July 2005, Plaintiff began a residency program at Lutheran General. Less than five months later, Plaintiff was terminated on November 21, 2005 from the internal medicine residency program at Lutheran General for violating her employment agreement with Lutheran General. (*See* November 21, 2005 Letter from Dr. Correia to Plaintiff, attached hereto as **Exhibit A**).

Almost three years later, in August of 2008, the University made the determination that it would no longer sponsor Plaintiff's ERAS application process by issuing her token and informed Plaintiff of its decision in an August 25, 2008 letter from Dr. Cathy L. Lazarus. (*See* **Exhibit B)**. The University made this determination based on Plaintiff's "recurrent and lengthy pattern of unacceptable conduct – as demonstrated by scurrilous and harassing e-mails to university personnel, repeated refusals to heed warnings to cease and desist, bizarre and at times threating content of e-mails, [and] contacts with other individuals to spread false and damaging information about the university and its personnel." (*See* August 12, 2009 Letter from Dr. Lazarus to Plaintiff, attached hereto as **Exhibit C**). The University explained that such behavior "demonstrated a clear divergence from [the] minimum standards of professionalism" and "cast grave doubt on the coherence of [Plaintiff's] thought process and the quality of [her] judgment." (*Id*.). As evidenced in Dr. Lazarus' letter, Plaintiff's termination from the residency program at Lutheran General was not a basis for the University's decision to no longer support Plaintiff's ERAS application.

This behavior cited by the University in its letter is consistent with Plaintiff's previous criminal charges of phone harassment of coworkers from her medical residency at Lutheran General in 2007 and 2009. In 2010, Plaintiff was convicted of felony charges of phone harassment and Cook County Judge Larry Axelrood sentenced her to two years' probation and recommended she undergo psychiatric evaluation. (*See* October 15, 2010 CBS Chicago News Article, attached hereto as **Exhibit D**).

Plaintiff's 2010 felony conviction resulted in the Illinois Department of Financial and Professional Regulation refusing to renew Plaintiff's Temporary Medical Permit (License No. 125049896) on February 18, 2011. (*See* Department of Financial and Professional Regulation License Look Up for Dr. Prabhjot Uppal, attached hereto as **Exhibit E**).

While on probation in October 2010, Plaintiff was charged and held on $500,000 bond for sending an email threatening to "blow out the brains" of Judge Axelrood and eight private citizens including Rahm Emmanuel and the attorneys and others involved in her previous two court cases for phone harassment. (**Exhibit D**). On June 22, 2015, Plaintiff pled guilty to email harassment and Judge Neera Walsh sentenced her to a year of court supervision and precluded her from contacting a surgeon at Lutheran General who she had harassed. (*See* June 23, 2015 Chicago Sun-Times News Article, attached hereto as **Exhibit F**, and Sentencing Order for Prabhjot Uppal, attached hereto as **Exhibit G**).

Plaintiff also initiated two investigations of the University by the United States Department of Education (the "Department") as a result of her complaints. The first investigation followed a complaint filed by Plaintiff in January 2009 claiming the University retaliated against her by refusing her a token based on the sexual discrimination claim she filed against Lutheran General in June 2006. (*See* the Department's 2009 Final Determination Letter,

4

attached hereto as **Exhibit H**). After an investigation, the Department found Plaintiff's claim to be without basis as the University was unaware of Plaintiff's discrimination claim against Lutheran General until after the University had already made its determination to no longer sponsor Plaintiff's ERAS application. (*Id*.).

The second investigation involved a second complaint filed by Plaintiff in July 2013 in which she claimed the University had sent her "email bombs" that caused her computer to crash in retaliation again for her 2006 sexual discrimination claim and for emails she sent the University between June and August 2013. (*See* the Department's 2014 Final Determination Letter, attached hereto as **Exhibit I**). In reaching its determination that there was no retaliation by the University, the Department noted that the "email bomb" was nothing more than a technical glitch caused by the University's attempt to reroute Plaintiff's threatening and harassing emails directed to the University's staff in 2013. (*Id*.).

## PROCEDURAL BACKGROUND

On April 30, 2015, Plaintiff filed her original Complaint against the University alleging breach of contract and unjust enrichment based on the University's decision to not issue her a token to apply for residency programs in August 2008. (Dkt. No. 1). In response to the University's original motion to dismiss, Plaintiff amended her complaint to withdraw her deficient claims and assert two new, but deficient, claims and to include four additional pages of "immaterial, impertinent, [and] scandalous" allegations regarding her medical publications and alleged harassment by the staff of Lutheran General and the University. (Dkt. No. 12).

The University moved again to dismiss Plaintiff's First Amended Complaint, and in the alternative, to strike Plaintiff's additional allegations as "immaterial, impertinent, [and] scandalous" pursuant to Fed. R. Civ. P. 12(f). (Dkt. No. 14 and 15). On July 20, 2015, Plaintiff

filed her Response to the University's Motion to Dismiss in which she withdrew her breach of written contract claim. (Dkt. No. 29). Thus, the remaining claims are Plaintiff's breach of fiduciary duty count and injunctive relief count based on her underlying breach of fiduciary duty claim. (*Id.*).

On July 31, 2015, Plaintiff issued a non-party subpoena for deposition testimony on Dr. Correia. (*See* Plaintiff's Subpoena, attached hereto as **Exhibit J**). Plaintiff's Rule 26(a)(1) Disclosures served on July 22, 2015 stated that Plaintiff believes Dr. Correia "has information regarding actions taken against Dr. Uppal as a post-graduate year one resident in the internal medicine program at Lutheran General Hospital during 2005 as well as incidents at the hospital during the time she was involved in with Dr. Uppal." (*See* Plaintiff's Rule 26(a)(1) Disclosures of Prabhjot Uppal, MD, at p. 3, attached hereto as **Exhibit K**).

Plaintiff's Subpoena set a deposition date of August 19, 2015 at 10:00 a.m. On August 17, 2015, Counsel for Dr. Correia sent an email to Plaintiff's counsel informing Plaintiff that she was challenging the service of the subpoena as Dr. Correia had moved out-of-state prior to the time the subpoena was issued and was no longer at her home in Illinois at the time the subpoena was allegedly served. Counsel for Dr. Correia provided its notice as a courtesy so that Plaintiff's counsel would not plan to proceed with the deposition of Dr. Correia on August 19, 2015. Regardless of the issue relating to service, the University and Dr. Correia believe the subpoena should be quashed for the reasons stated below.

Pursuant to Fed. R. Civ. P. 26(c)(1) and LR 37.2, the University and Dr. Correia certify that William McErlean, counsel for the University, made a good faith attempt to resolve their concerns regarding the subpoena issued on Dr. Correia with Justin Kaplan, counsel for Plaintiff, by telephone on Friday, August 7, 2015, but the parties were unable to reach an accord.

6

**LEGAL STANDARD**

Fed. R. Civ. P. 45(d)(3)(A)(iv) mandates that a court "shall quash or modify" a subpoena if it "subjects a person to undue burden." *Robinson v. Stanley*, 2010 WL 1005736, at *2 (N.D. Ill. Mar. 17, 2010) (granting non-party's motion to quash a subpoena for testimony and for a protective order). In *Robinson*, this Court recognized that the 1991 amendments to Rule 45 "enlarge[d] the protections afforded persons who are required to assist the court by giving information or evidence." *Id.* Accordingly, the rule "requires the court to protect all persons from undue burden imposed by the use of the subpoena power." *Id.* This requirement differs from "the discretionary language of Rule 26(c), under which a court 'may make any order which justice requires to protect a party or person from ... undue burden....' It is a 'command [ ].'" *Id.* (quoting *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir. 2003)); *see also United States v. Amerigroup Illinois, Inc.,* 2005 WL 3111972, *2 (N.D. Ill. Oct. 21, 2005).

This issue of undue burden is particularly important when the subpoena involves a non-party as in this case. *See Last Atlantis Capital, LLC v. AGS Specialist Partners*, 2013 WL 182792, at *1 (N.D. Ill. Jan. 17, 2013) (modifying an overly broad subpoena). When making the determination of "whether the subject of a subpoena is being subjected to 'undue burden,' courts consider a number of factors, including the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the [discovery], the breadth of the request, and the burden imposed on the subpoenaed party." *Id*. An individual's "non-party status" is a "significant factor to be considered." *Amerigroup Illinois, Inc.*, 2005 WL 3111972 *4. The Court in *Amerigroup Illinois, Inc.* noted the rationale for the rule as the First Circuit has explained:

> Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs.

*Id*. at *5 (quoting *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998)) (Emphasis added).

Additionally, Fed. R. Civ. P. 26(c) provides the Court with the authority to issue a protective order "for good cause shown." *Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 223 (N.D. Ill. 2004). Specifically, the Rule states: "Upon motion by a party or by the person from whom discovery is sought, ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ..." *Id.* (citing Fed.R.Civ.P. 26(c)).

## ARGUMENT

Here, Plaintiff seeks to require a non-party to sit for a deposition regarding events that occurred over ten years ago in 2005. Those events and any information known by Dr. Correia of those events are completely irrelevant to Plaintiff's claims relating to the University's decision not to issue her a token in 2008. It is difficult to imagine how events as to how Plaintiff managed to get herself fired from her residency with Lutheran General in 2005 has any connection or relevance to the University's final decision not to issue a token in August 2008, particularly in light of the rationale for the University's decision which it shared with Plaintiff by letter. (*See* August 12, 2009 Letter from Dr. Lazarus to Plaintiff, attached hereto as **Exhibit B**).

Subjecting Dr. Correia to a deposition which, will require her to miss time from her medical practice, will place an undue burden on her. While the University and Dr. Correia can

8

only speculate as to what information Plaintiff seeks, Plaintiff's initial disclosures indicate she seeks information relating to events that occurred in 2005 and which were unrelated to the University. Further, Dr. Correia does not work for the University and had absolutely no involvement in the University's decision not to issue Plaintiff a token for ERAS application in 2008. Simply put, Plaintiff has provided no legitimate basis for the information she seeks and the Court should exercise its discretion by granting the University and Dr. Correia's motion to quash the subpoena and for protective order.

Plaintiff is on a wild goose chase to uncover information that is completely unrelated to the issues raised in this lawsuit. The University believes that its pending motion to dismiss will result in a dismissal of Plaintiff's claims and an end to this lawsuit. In the event the Court agrees with the University and dismisses Plaintiff's claims, there will be no need for discovery in this matter, including any depositions of non-parties. In the meantime, Plaintiff should not be allowed to pursue completely irrelevant non-party discovery.

WHEREFORE, Defendant, Rosalind Franklin University of Medicine and Science, and Non-Party, Natalie Correia, DO, respectfully request that the Court quash the non-party subpoena issued to Dr. Correia by Plaintiff and for a protective order.

Dated: August 18, 2015 Respectfully submitted,

**ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE**

By: /s/ William M. McErlean[2]
One of its Attorneys

William M. McErlean (3122871)
Ryan M. McLaughlin (6311220)

---

[2] By filing this document, I attest that I have received consent from all other signatories to file this document with their electronic signature.

        BARNES & THORNBURG, LLP
        One North Wacker Drive, Suite 4400
        Chicago, Illinois 60606-2833
        Phone:  (312) 357-1313
        Fax:  (312) 759-5646
        william.mcerlean@btlaw.com
        ryan.mclaughlin@btlaw.com

*Attorneys for Defendant Rosalind Franklin University of Medicine and Science*

**DR. NATALIE CORREIA**

By:   /s/ Michael Kerns
       One of her Attorneys

Mary Ellen Cherry
Michael Kerns
Advocate Health Care
3075 Highland Parkway
Downers Grove, Illinois 60515-1288
Phone:  (630) 929-8142
Fax:  (630) 990-5494

*Attorneys for Non-Party Dr. Natalie Correia*

## CERTIFICATE OF SERVICE

 I hereby certify that on August 18, 2015 a copy of the foregoing **Memorandum in Support of Defendant Rosalind Franklin University of Medicine and Science and Non-Party Natalie Correia, DO's Motion to Quash and for Protective Order** was filed electronically. Notice of this filing will be sent to the attorneys of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

       /s/ William M. McErlean
       William M. McErlean

CHDS01 973185v1