# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DR. PRABHJOT UPPAL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 3806 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCE, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

The background of this case is, to say the least, curious. And sad. The plaintiff is a doctor who graduated in 2005 from the Rosalind Franklin University of Medicine and Science. ("the "University"). She then obtained a residency in internal medicine at Lutheran General Hospital in Park Ridge, Illinois. However, as a result of claimed serious misconduct that violated her employment agreement with Lutheran General, her participation in the residency program was terminated by the Hospital in November 2005. The letter of termination was signed by Dr. Natalie Correia, Senior Associate Program Director of Lutheran General Hospital's Internal Medicine Residency Program. [Dkt. #34, Ex. A].

Three years later on August 25, 2008, the University informed Dr. Uppal that it could no longer sponsor any further applications for participation in a residency program. [*See* Dkt. #34, Ex. B., Letter of August 25, 2008]. The defendant amplified on the reasons for that refusal in its letter of August 12, 2009, in which the plaintiff was informed that as a consequence of her "recurrent and

lengthy pattern of unacceptable conduct," which consisted of "scurrilous harassing emails *to University personnel*, repeated refusals to heed warnings to cease and desist, bizarre and at times threatening content of emails [to University personnel], contacts with other institutions and individuals to spread false and damaging information *about the University and its personnel*," the University would not sponsor her applications for a residency program. [Dkt. #34, Ex. C](Emphasis supplied). The August 12, 2009 letter made clear that in the University's opinion, her conduct and the text of her emails to University personnel "cast grave doubt on the coherence of [the plaintiff's] thought processes and the quality of [her] judgment."

In October 2010, while on criminal probation for threats made in 2007 and 2008 – to which the August 12, 2009 letter from the University was apparently referring – Dr. Uppal was charged with and convicted of a felony for sending a letter to the White House in which she threatened to kill Rahm Emanual, President Obama's then Chief of Staff, Judge Larry Axelrod, and seven other individuals involved in two court cases in which Dr. Uppal was charged with phone harassments of former coworkers in 2007 and 2009.[1]

In 2015, Dr. Uppal sued the University, claiming breach of fiduciary duty and breach of contract. She has since dropped the breach of contract claim, and the First Amended Complaint now charges that the University breached its alleged fiduciary duties to the plaintiff by refusing to

---

[1] *See* Exhibit D. Judge Axelrod was the Judge who in 2009 had sentenced the plaintiff to two years probation and recommended a psychiatric evaluation. Plaintiff's 2010 felony conviction resulted in the Illinois Department of Financial and Professional Regulation refusing to renew Plaintiff's Temporary Medical Permit on February 18, 2011. (*See* Exhibit E). On June 22, 2015, Plaintiff pled guilty to email harassment and Judge Neera Walsh sentenced her to a year of court supervision and precluded her from contacting a surgeon at Lutheran General whom she had harassed. (*See* Exhibits F and G).

cooperate in her application process for a post-Lutheran General residency program.[2] There is no contention in the First Amended Complaint that the University had anything to do with Lutheran General Hospital's termination of plaintiff's residency in 2005 or that the Hospital was involved in the University's refusal in 2008 to assist the plaintiff in applying for any new residency.[3]

Dr. Uppal has issued a non-party subpoena to Dr. Correia on the theory that she may have information regarding actions taken against Dr. Uppal during 2005 while she was a resident in the internal medicine program at Lutheran General Hospital. It is also alleged that she may have information regarding incidents at Lutheran General during the time Dr. Uppal was a resident there. (Ex. K, ¶L). Dr. Correia has moved to quash, as has the University. [Dkt. #33].

Perhaps she has such information. But as Judge Easterbrook has said in another context, "[s]o what?...Who cares?...True, but irrelevant." *Israel Travel Advis. Serv. v. Israel Iden. Tours*, 61 F.3d 1250, 1259 (7th Cir. 1995). Whatever information Dr. Correia might have about the plaintiff's conduct while at Lutheran General Hospital in 2005 is irrelevant to the claim that the University's refusal, which began in 2008 – three years after Dr. Correia terminated the plaintiff's residency – to cooperate with Dr. Uppal in securing another residency program constitutes a breach of fiduciary duty. [Dkt. #12, ¶¶11-12]. And that is what the plaintiff has charged.

## ANALYSIS

The importance of protecting parties and non-parties from undue burden is found in various provisions of the Federal Rules of Civil Procedure. For example, Rule 26(c)(1) empowers a court

---

[2] The defendant has moved to dismiss. That motion has yet to be decided.

[3] Nor was such a contention advanced at the oral argument on the motion to quash. The plaintiff did not file a written response to the detailed and thoroughly supported motion.

to issue an order to protect a party or person from *inter alia*, undue burden or expense. And Rule 26(g)(1)(B)(iii) provides that every discovery request must be signed by an attorney of record and that by signing, the attorney certifies that the document is neither unreasonable nor unduly burdensome. And finally, Rule 45(d)(1) requires that attorneys responsible for serving a subpoena must avoid imposing undue burden or expense on a person subject to the subpoena. To implement this requirement, Rule 45(d)(3)(A)(iv) mandates that on timely motion a court "must quash or modify" a subpoena that "subjects a person to undue burden."

This textually mandatory requirement differs from "the discretionary language of Rule 26(c), under which a court 'may make any order which justice requires to protect a party or person from ... undue burden....' It is a 'command [ ].'"*Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir.2003). *See also Elliot v. Mission Trust Services, LLC,* 2015 WL 1567901, 3 (N.D.Ill.2015)("The desideratum of Fed.R.Civ.P. 45 [(d)]is the protection of non-parties from undue burdens."); *Last Atlantis Capital, LLC v. AGS Specialist Partners*, 2013 WL182792, at *1 (N.D. Ill. 2013). When making the determination of whether a person will be subjected to undue burden, courts consider a number of factors, including the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the discovery, and the breadth of the request. The rationale for the undoubted solicitude accorded non-parties is that, although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs. *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998).

4

Of course, non-parties are not exempt from the basic obligation of all citizens to provide evidence of which they are capable upon appropriate request. *Jaffee v. Redmond,* 518 U.S. 1, 9 (1996). Or as Wigmore phrased it: "the public ... has a right to every man's evidence." 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940)). But, before anyone, party or non-party, can be forced to submit to a deposition, the evidence that is sought must be relevant. At one time, Rule 26 provided that any evidence that was relevant to the subject matter of the case was fair game. The 2000 amendments to Rule 26(b)(1) narrowed that definition so that today parties may obtain discovery regarding any non-privileged matter that is "relevant to any party's claim or defense...." "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings." Fed.R.Civ.P. 26(b)(1), Advisory Committee Notes to 2000 Amendments (West 2002). [4]

The discovery rules are not a ticket, Judge Moran has wisely observed, to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.,* 1994 WL 75055 at *2 (N.D.Ill.1994). "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Id.* While information need not be admissible at trial to be relevant, a request for information must appear "reasonably calculated to lead to the discovery of admissible evidence." *See Redwood v. Dobson,* 476 F.3d 462, 469 (7th Cir.2007); *Jackson v. N'Genuity Enterprises Co.,* 2010 WL 4928912, 1 (N.D.Ill. 2010).

---

[4] Under Revised Rule 26(b)(1), which will take effect December 1, 2015 unless Congress acts to reject the amendment, the court's present discretionary authority to allow discovery of "any matter relevant to the subject matter involved in the action" will be eliminated.

5

The Supreme Court has cautioned that the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.... Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando,* 441 U.S. 153 (1979). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352, 358 (1978). Failure to exercise that control results in needless and enormous costs to the litigants and to the due administration of justice. Judicious use of the court's case-management authority during the litigation can also help to check overlawyering, and appropriate limits on discovery can effectively channel the efforts of counsel *before* excessive time and resources are expended. *Montanez v. Simon*, 755 F.3rd 547, 552 (7th Cir. 2014). *Cf. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); Frank Easterbrook, *Discovery as Abuse,* 69 B.U.L.Rev. 635 (1989. *See also Hickman v. Taylor,* 329 U.S. 495, 507-508 (1947).

And so, courts frequently restrict discovery based on relevance objections. *See, e.g., Balderston v. Fairbanks Morse Engine Div. Of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir.2003); *Kinkead v. Southwestern Bell Telephone* Co., 49 F.3d 454, 457 (8th Cir.1995) (affirming district court's denial of motion to compel discovery based in part on irrelevance of documents in question); *Diak v. Dwyer, Costello, and Knox, P.C.,* 33 F.3d 809, 813 (7th Cir.1994); and *Detweiler Bros., Inc. v. John Graham & Co.,* 412 F.Supp. 416, 422 (E.D.Wash.1976).

And finally, there is Rule 26(b)(2)(C)(iii)'s implicit requirement of proportionality. *See, e.g.*, *United States ex rel. Oughatiyan v. IPC The Hospitalist Company, Inc*., 2015 WL 4249195, 2 (N.D.Ill.2015); *U.S. v. Dish Network, L.L.C.*, 2010 WL 5463101, *3 (C.D. Ill. 2010); *Wiginton v.*

6

*CB Richard Ellis, Inc.*, 229 F.R.D. 568, 571 (N.D. Ill. 2004).[5] Where, as here, the proposed discovery "outweighs its likely benefit," – where the book is not worth the candle – it ought not be allowed, and a court can *sua sponte* raise the issue. Rule 26(b)(2)(C). [6]

These principles compel the granting of Dr. Correia's motion to quash. It is clear on this record that the information that Dr. Correia is thought to possess regarding the plaintiff's misconduct in 2005 has nothing to do with the defendant's charged wrongdoing beginning in August 2008 and thus could not lead to the discovery of admissible evidence. Phrased differently, her knowledge of the plaintiff's difficulties in 2005 while a resident in internal medicine at Lutheran General Hospital is irrelevant to the defendant's alleged refusal to assist Dr. Uppal in 2008 in securing placement in a different residency – a refusal which appears to have been based upon Dr. Uppal's misconduct directed to employees of the University. Subjecting Dr. Correia to a deposition under these circumstances will therefore impose an undue burden on her – and a burden that is without any offsetting value to the case.

---

[5] The word proportional does not appear in Rule 26(b)(2)(C)(iii). The proposed amendment to the Rule (effective December, 2015) will use the word as a part of the definition of the scope of discovery. It provides:
> **Scope in General**. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

[6] Under the proposed 2015 Amendments, it will be the "obligation of the parties to consider these [proportionality] factors in making discovery requests, responses or objections." Proposed Amendments, Committee Note to Rule 26, at 19.

Given this disposition of Dr. Correia's motion, we need decide whether the University has standing to move to quash. It may be noted however that a number of courts have held that generally, absent an independent interest requiring protection a motion to quash or modify a subpoena must be brought by the individual to whom it was directed, and that a party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden. *See Langford v. Chrysler Motors Corp.,* 513 F.2d 1121, 1126 (2nd Cir.1975); *Thomas v. Marina Assoc.,* 202 F.R.D. 433, 434–435 (E.D.Pa.2001); *Zoobuh, Inc. v. Rainbow Intern. Corp.*, 2015 WL 2093292, 2 (D.Utah 2015).

**CONCLUSION**

The Motion of Dr. Correia to Quash [Dkt. #33] is granted.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/26/15